**Robert S. Banks, Jr., OSB No. 821862**
bbanks@SamuelsLaw.com
SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, Oregon  97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

**Lawrence R. Cock, OSB No. 102524**
lrc@cablelang.com
CABLE, LANGENBACH, KINERK & BAUER, LLP
Suite 3500, 1000 Second Avenue Building
Seattle, Washington 98104-1048
Telephone (206) 292-8800
Facsimile (206) 292-0494

         Of Attorneys for Plaintiffs


IN THE UNITED STATES DISTRICT COURT OF THE STATE OF OREGON

DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| Leon Brown, John and Deborah Newcomb, Majid Majidian, William and Roberta Isgreen, Kirk Clothier,  Karen Schoen, Souror Baetjer, Nancy Gilbert, Rollin Chew, Edwin L. Chew Family Trust, Bernard Gutow as Trustee of the Gutow Family Trust dtd 10/28/1991, all individually and on behalf of all others similarly situated, | NO. _____  CLASS ACTION COMPLAINT JURY TRIAL DEMANDED |
| Plaintiffs, | |
| vs. | |
| Norman Gary Price and Christina A. Price; | |

Page 1 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

Ronald J. Robertson and Kathryn Robertson;
RP Capital, LLC; Douglas R. Bean and Megan
Susanne Bean; S. Christopher Bean and Jodi J.
Bean; Bean Holdings, LLC; Jonathan Bishopp
and Monica Bishopp; Timothy J. Feehan, Jr.
and Kimberly A. Feehan; Strategic Capital
Alternatives LLC; and SCA Holdings LLC,

                              Defendants.


## INTRODUCTION

1.      The Plaintiffs were clients of two non-party registered investment advisory firms

known as Strategic Capital Group, LLC  ("SCG") and Private Advisory Group, LLC ("PAG"),

(collectively referred to as the "RIA Firms") and make claims for breach of contract for failing to

provide objective, non-conflicted investment advice.  Additionally, they make claims under elder

abuse statues, state and federal securities law violations, and for breach of fiduciary duty.   The

gravamen of the complaint is that the defendants failed to advise the plaintiffs of defendants'

connections to Aequitas companies when they were soliciting and selling Aequitas investments

to the plaintiffs.   They bring this case for themselves and on behalf of all investors similarly

situated.

2.      The Defendants are (a) investment advisor representatives or brokers ("IARs")

who were a substantial contributive factor in the sale of those Aequitas Investments to plaintiffs;

(b) the principals and control persons of the non-party registered investment advisory firms  SCG

and PAG,;(c) a broker-dealer, RP Capital, LLC,  that  promoted and was a substantial

contributive factor in or materially aided the sale of the Aequitas Investments to plaintiffs; and

(d) material aiders and control persons who operated investment  advisory platforms that were

directly and materially involved with both Aequitas and the other defendants in the scheme to

sell the Aequitas Investments.    Individual investment adviser representatives of SCG and PAG

not named as defendants at all times acted as agents for and on behalf of SCG and PAG in

Page 2 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

soliciting and selling the Aequitas investments in the ways described below.

3.      The Aequitas Investments have failed.  There are approximately 40 Aequitas companies, and they have been ordered into receivership by a federal district court judge. The Securities and Exchange Commission ("SEC") on March 10, 2016 filed a complaint in the U.S. District Court of Oregon, Portland Division, against Aequitas entities and three of its key officers (*Securities and Exchange Commission v. Aequitas Management, LLC, et al.*, Case 3:16-cv-00438-PK).    A receiver has been appointed to liquidate any assets and pay creditors.  Plaintiffs are tendering their Aequitas Investments to the Defendants upon receipt of the full remedies requested, including any rights to recover from the receivership.

4.      Two RIA firms sold the Aequitas Investments to the plaintiffs.   One was SCG, which operated until about April 2014.  The other was PAG, which was formed in November 2013 to acquire the clients and salespersons of SCG and to continue to sell Aequitas Investments to plaintiffs and the class.

5.      Aequitas Capital Opportunities Fund, LP, Ronald J. Robertson, and Timothy J. Feehan, Jr., along with executives at Aequitas, owned 68% of PAG through Aspen Grove Equity Solutions, LLC ("Aspen Grove").  The remainder of PAG is or was owned by defendant Bean Holdings, LLC, which is owned by defendants S. Christopher Bean and Douglas Bean.

6.      Defendants Timothy J. Feehan, Jr., Ronald J. Robertson, and Norman Gary Price owned and/or managed SCG while it was promoting and selling Aequitas investments to Plaintiffs.

7.      Defendant RP Capital was also actively involved in and compensated for the sales of Aequitas Investments to the clients of SCG and PAG.  RP Capital is owned by defendants Price and Robertson.  Pursuant to a contract between RP Capital and Aequitas Capital Management, Inc., RP Capital received a percentage of the outstanding principal balance for each Aequitas Private Note sold to the Plaintiffs through PAG and SCG.

Page 3 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

8.    The individual plaintiffs' combined investment losses are over $4,445,000.  The total present investment losses of all investors who purchased Aequitas investments through PAG and SCG could be as high as $100 million.   The total investment losses of all persons who purchased Aequitas investments are over $400 million.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this class action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interests and costs; is a class action involving 100 or more class members; and at least one member of the class is a citizen of a different state than a Defendant.

10.   Venue is proper in this district under 28 USC § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

11.    Plaintiff Leon Brown is 86 years old, a retired longshoreman, and lives in Long Beach, California.  He is the trustee of the Brown Revocable Trust dtd 03/18/2002.  Beginning in 2013,  SCG investment adviser Antonio Ramirez ("Ramirez") solicited and sold Plaintiff multiple Aequitas investments in ACF Notes for his trust accounts, with the last sale in June, 2015 for a total investment of $1,080,295.  Those investments represent about 56% of Plaintiff's investment portfolio at Private Advisory Group and about 68% of his total securities investments.   At the time of the sales, Ramirez told Plaintiff that the investments were in hospital receivables, which the hospitals would buy back the notes if the debtors did not pay, and that the only way he could lose would be if all the hospitals went out of business.  He also told plaintiff that the Aequitas investments were safer than investing in stocks and that PAG was closely monitoring Aequitas.  Ramirez misrepresented that the investments were safe, with minimal risk, and were suitable for Plaintiff.  His claim is for $1,080,295 plus interest at the legal rate, and for costs incurred in bringing this claim.

Page 4 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

12.    Plaintiffs John and Deborah Newcomb are husband and wife, and live in Long Beach, California.  Mr. Newcomb is 52 years old and works as a general manager for a design company.  Mrs. Newcomb is 51 years old.    In 2011 and 2012, Defendant Ramirez solicited and sold them Aequitas investments in the ACF Notes totaling $275,000.  When the notes matured, Ramirez advised them to reinvest as a single ACF Note in June, 2015.   Defendant Ramirez misrepresented that the investments were safe, with minimal risk, and were suitable for the Newcombs.  He assured plaintiffs that Aequitas was a secure investment in hospital billing receivables.  Their claim is for $275,000 plus interest at the legal rate, and for costs incurred in bringing this claim.

13.    Plaintiff Majid Majidian is 61 years old, retired, and resides in Redmond, Washington.  He has Parkinson's disease, is unable to work, and has two children in college.  In December, 2015, Defendant Douglas Bean solicited and sold Plaintiff a $200,000 Aequitas investment in ACF Note to Plaintiff's IRA account.  This investment represented about 10% of his investment portfolio.  Defendant did this despite knowing of Plaintiff's health concerns, need for liquidity, and his desire to invest more conservatively and have less risk of losing his investment.  A mere few weeks later, Plaintiff learned that his entire investment may already be lost.   Defendant Bean misrepresented that the investment was safe, with minimal risk, and was suitable for Plaintiff.  His claim is for $200,000 plus interest at the legal rate, costs, and reasonable attorney fees.

14.    Plaintiffs William and Roberta Isgreen are husband and wife and live in Santa Fe, New Mexico.  Dr. Isgreen is 78 years old, and a retired physician.  Mrs. Isgreen is 75 years old, and is a semi-retired actress.  They are the respective trustees of the William P. Isgreen MD Revocable Trust u/a 1/19/1996 and the Roberta Isgreen Revocable Living Trust u/a 1/19/1996.  In October, 2013, Defendant S. Christopher Bean solicited and sold Mrs. Isgreen a $100,000 Aequitas investment in ACF Note to her trust account.  In February, 2015, Defendant Bean

Page 5 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5ᵗʰ Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

solicited and sold a $100,000 investment in ACF Note to Dr. Isgreen's trust account, and in March, 2015 he sold, without authorization, another $99,000 investment in ACF Note to Mrs. Isgreen's trust account.   In total, Plaintiffs made $299,000 in Aequitas investments through Defendant Bean.  Without Mrs. Isgreen's approval and against her express wishes, Defendant Bean renewed the first $100,000 investment in October, 2015 for a four-year term.  Mrs. Isgreen's $199,000 in Aequitas represented her trust account's entire portfolio at Private Advisory Group, and Dr. Isgreen's $100,000 Aequitas investment represented 25% of his portfolio at that firm.  Combined, this was about 20% of the Plaintiffs' total investments at PAG. Defendant Bean misrepresented that the investments were safe, with minimal risk, and were suitable for Plaintiffs.  He recommended the ACF Notes despite knowing that plaintiffs were elderly, risk adverse, and desired safe investments. Their claim is for $299,000 plus interest at the legal rate, costs, and reasonable attorney fees.

15.    Plaintiff Kirk Clothier was 70 years old in late September 2015 when Christopher Bean solicited him to invest in a $1,000,000 Aequitas note; the note matured 90 days after purchase. Bean sold Clothier the Aequitas note in his capacity as an investment adviser representative, through PAG. Mr. Clothier was partially retired, had modest income, and the investment represented more than 20% of Mr. Clothier's total assets. Christopher Bean represented that the 90 day promissory note was a safe investment, fully collateralized, and that Aequitas had assets that significantly exceeded liabilities. Bean misrepresented the business model of Aequitas, telling Clothier that Aequitas bought accounts receivables from hospitals and that the hospitals were obligated to buy back the debt if not collected within 90 days. Bean omitted completely Aequitas' involvement with Corinthian educational debt and failed to disclose Aequitas' ownership interest in PAG. Clothier told Bean that the money Clothier had was from the sale of his house, and that Clothier needed the money to buy a house to live in. Bean reassured him that the note was both safe and appropriate for Clothier. Bean did not send

Page 6 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

Clothier any financial statements from Aequitas prior to the investment. Mr. Clothier's loss of principal is $1,000,000 and his claim is for $1,000,000.00, plus interest, costs, and reasonable attorney fees.

16.    Plaintiffs Keith Canter and Karen Schoen are husband and wife, and they live in California.  They bring this claim on behalf of their respective IRA accounts.  Mr. Canter also brings this claim as trustee on behalf of the Canter Living Trust dtd 08/12/2004.  Mr. Canter is 59 years old and a disabled endodontist. Ms. Schoen is 52 years old, a semi-retired management consultant who is now looking to return to full-time employment due to the investment losses she suffered from her IAR's actions.  Beginning in 2010, SCG investment adviser Aaron Douglas Maurer ("Maurer") solicited and sold Mr. Canter multiple Aequitas investments in ACF Notes for his trust and IRA accounts, with the last sales in February 2015 and December 2013, respectively, for a total investment of $450,000 in ACF Notes.  Maurer also solicited and sold Plaintiff an interest in the ETC Founders Fund for $250,000 in January, 2012 for his trust account.  These investments represented about 17% of Mr. Canter's investment portfolio with Defendants.   Beginning in July, 2014, Defendant Maurer solicited and sold Ms. Schoen a $250,000 investment in ACF Notes.  The note matured and Maurer solicited and sold to Ms. Schoen a new note for $263,901 in February, 2015.   That represented about 25% of her retirement savings with Defendants.   At the time of the sales, SCG's Maurer misrepresented to both Plaintiffs Canter and Schoen that the ACF Note investments were in hospital receivables, the notes were safe and 100% collateralized, and that the hospitals would buy back any uncollectible notes if the debtors did not pay.  Maurer told Ms. Schoen that the ACF Notes were in effect safer than the government or corporate bond market – a "gold standard" investment that they were lucky to have.  At the time of the sale of the Founders Fund interest, Maurer told Mr. Canter that the Founders Fund was a wholly owned company, separate from Aequitas. Plaintiff's interest in the Founders Fund has nearly doubled on paper since it was purchased, and

Page 7 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

Plaintiff has been paying Defendant's 1% management fee on it and the phantom value. Maurer misrepresented that the investments were safe, with minimal risk. Mr. Canter's claim is for $700,000 plus interest at the legal rate, and for costs incurred in bringing this claim pursuant to the California Securities Law. Ms. Schoen's claim is for $263,901 plus interest at the legal rate, and for costs incurred in bringing this action.

17.     Plaintiff Souror Baetjer brings this claim on behalf of her rollover IRA account. She is 72 years old, retired from being an assistant dean at a community college, and lives in Indio, California. In September, 2012, SCG's investment adviser Maurer solicited and sold Plaintiff an Aequitas investment in an Income Opportunity Fund Secured Promissory Note in the amount of $250,000. This amount represented about 53% of her rollover IRA account and about 28% of her investment portfolio with SCG. It was about 21% of her total investment savings. In February, 2015, Maurer transferred the proceeds from that investment and to purchase an AIOF Senior Secured Promissory Note for $250,000. Maurer assured Ms. Baetjer that the Aequitas investment was highly secure and fully backed by Aequitas's assets, and there was nothing to worry about. Maurer gave Ms. Baetjer a pre-filled subscription agreement and told her to just sign and date the last page. Maurer misrepresented that the investments were safe, with minimal risk, and were suitable for Plaintiff. Her claim is for $250,000 plus interest at the legal rate, and for costs incurred in bringing this claim.

18.     Plaintiffs Rollin Chew and Nancy Gilbert are husband and wife living in Cupertino, California. They bring this claim as co-trustees of the Chew Family Living Trust dtd 4/25/1997, and on behalf of their respective IRA accounts. Mr. Chew is 61 years old, retired, and had worked as an environmental scientist and program manager for computer companies. Ms. Gilbert is 60 years old, and semi-retired with occasional work as a human resources consultant. Beginning in 2012, Defendant Peterson solicited and sold Plaintiffs multiple Aequitas investments in ACF Notes totaling $481,383 to their respective IRA accounts and to

Page 8 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

their family trust account.    The Chew Family Living Trust purchased a 4 year ACF Note on

December 12, 2013 for $100,000.   This amount represented 100% of their investment portfolio

with Defendant.   Over $150,000 of this came from a lump-sum pension rollover that SCG

adviser Kenneth Peterson encouraged Ms. Gilbert to invest in the ACF Notes.  Peterson told

Plaintiffs that the ACF Notes were stable, had security of principal, low risk, and very little if

any downside.   Peterson further represented that the ACF Notes were an excellent investment

for the fixed income component of their asset allocation.   Plaintiffs specifically asked Peterson

whether the Aequitas investment was FDIC insured.  Peterson told them that if TD Ameritrade

was the custodian, their investment is covered by SIPC which is "similar but different" than

FDIC.  He also misrepresented to them that by buying the ACF Note they would be investing

only in hospital receivables collected through the "CarePayment" program, in which only

patients with good FICO scores could participate, and that the hospitals would buy back the debt

if the debtors did not pay so the investment was secure.  Peterson misrepresented that the

investments were safe, with minimal risk.  Their claim is for $481,383 plus interest at the legal

rate, and for costs incurred in bringing this claim.

      19.    Plaintiff Rollin Chew also brings claims as co-trustee of the Edwin L. Chew 1981

Family Trust u/a 5/21/1981 and as power of attorney for co-trustee Marian S. Chew.  Rollin

Chew's father, Edwin, recently died at the age of 95.  His mother, Marian Chew, is 92 years old.

In 2013, Defendant Peterson also solicited Rollin Chew on behalf of the Edwin Chew Trust and

sold that Trust two 4 year ACF Notes in the elderly couple's trust account totaling $150,000 in

June, 2013.  Those ACF Notes represented about 25% of the trust's portfolio with Defendant,

and Defendant represented that these investments would be a secure source of income for Edwin

and Marian.  However, the ACF Notes that Peterson sold were for four-year terms, and interest

earned was reinvested rather than paid out, all on Peterson's advice.  SCG adviser Peterson made

the same misrepresentations he made to Rollin and Nancy Chew described above, and he

Page 9 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

misrepresented that the investments were safe, with minimal risk, and were suitable for the trust account and its elderly beneficiaries.  Plaintiff Rollin Chew's claim on behalf of the Edwin L. Chew 1981 Family Trust and as power of attorney for co-trustee Marian Chew is for $150,000 plus interest at the legal rate, and for costs incurred in bringing this claim.

20.    Plaintiff Bernard Gutow is 76 years old, semi-retired and lives in San Carlos, California.  He brings this claim as trustee of the Gutow Family Trust dtd 10/28/1991. Beginning in April, 2011 and through September, 2014, SCG solicited and sold Plaintiff four $100,000 Aequitas investments in ACF Notes totaling $400,000, and a $200,000 investment in the AIOF Senior Secured Promissory Note, for a total $600,000 invested in Aequitas.  That amount represents 100% of his SCG/PAG investments, and about 30% of his total investment portfolio.  The April, 2011 ACF Note was renewed in April, 2013.  At the time of the sales and before making the recommendations to buy the ACF Notes and AIOF note, SCG / PAG did not ask Plaintiff about his investment objectives and risk tolerance.  Instead they told Plaintiff that the Aequitas investments were very safe because any bad debts could be returned to the hospitals.  SCG / PAG misrepresented that the investments were safe, with minimal risk, and were suitable for Plaintiff.  His claim is for $600,000 plus interest at the legal rate, and for costs incurred in bringing this claim.

21.    Defendant Norman Gary Price is a 50% owner and control person of Defendant RP Capital, LLC.  Mr. Price is the former owner and Chief Executive Officer of Strategic Capital Group, Inc.  He is or was an indirect owner of PAG.  He is liable as an owner and control person. The martial community of Norman Gary Price and Christina N. Price is liable for all acts and omissions of Norman G. Price.

22.    Defendant Ronald J. Robertson is a 50% owner and control person of Defendant RP Capital, LLC. Defendant Robertson is a former owner and manager or officer of Strategic Capital Group, Inc. He is or was an indirect owner of non-party PAG.  He is liable as an owner

Page 10 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

and control person. The martial community of Ronald J. Robertson and Kathryn Robertson is liable for all acts and omissions of Ronald J. Robertson.

23.    Defendant RP Capital, LLC is a securities broker-dealer firm based in Gig Harbor, Washington and since at least 2005 has been owned by Defendant Norman Gary Price and Ronald Jay Robertson.  SCG and PAG were under common control with RP Capital.  RP Capital solicited PAG, SCG and its investment advisor representatives to recommend the Aequitas Investments and/or solicited plaintiffs and the class to make Aequitas Investments, for which it received compensation that was not disclosed to plaintiffs or the class.  Investment adviser representatives and registered representatives Peterson, Ramirez, Maurer and Feehan all were licensed to sell securities through RP Capital.   RP acted as a substantial contributing factor by soliciting PAG, SCG and their investment advisor representatives to purchase Aequitas Investments.

24.    Defendant Douglas R. Bean has been the Chief Operating Officer of non-party PAG since November, 2013, and is a member of Defendant Bean Holdings, LLC, and he is a control person.   He directly solicited and sold Aequitas investments to Plaintiff Majid Majidian. The marital community of Douglas R. Bean and Megan Susanne Bean is liable for all acts and omissions of Douglas R. Bean.

25.    Defendant S. Christopher Bean has been the Chief Executive Officer of non-party PAG since November, 2013, is a member of Defendant Bean Holdings, LLC, and is a control person.   He directly solicited and sold Aequitas investments to Plaintiffs Janice King, William and Roberta Isgreen, Howard Cheng, Nancy Ta, Kirk Clothier, and the Luis. The marital community of S. Christopher Bean and Jodi J. Bean is liable for all acts and omissions of S. Christopher Bean.

26.    Defendant Bean Holdings, LLC is an owner and control person of PAG, and is owned by Defendants Douglas R. Bean and S. Christopher Bean.

Page 11 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

27.     Defendant Jonathan Bishopp was, at all material times, PAG's Chief Compliance Officer and a control person of PAG. The marital community of Jonathan Bishopp and Monica Bishopp is liable for all acts and omissions of Jonathan Bishopp.

28.     Defendant Timothy J. Feehan, Jr. holds or has held the Series 7, 24, 63, and 65 FINRA licenses and was a registered representative and principal of RP Capital, LLC until April 2016.  He is liable as a control person of RP Capital. The marital community of Timothy J. Feehan, Jr. and Kimberly A. Feehan is liable for all acts and omissions of Timothy J. Feehan, Jr.

29.     Non-party PAG is an RIA firm headquartered in Redmond, Washington. All PAG supervision of IARs, decision-making for PAG, maintenance of PAG's books and records and execution or approval of transactions by PAG IARs, occurs in Redmond, Washington. As explained in more detail below, PAG is a successor in interest to Strategic Capital Group, Inc. and was the RIA firm where defendants Douglas R. Bean, S. Christopher Bean, Antonio Ramirez, Kenneth J. Peterson and A. Douglas Maurer were all IARs.   PAG is not named as a party because the federal district court in Securities and Exchange Commission v. Aequitas Management, LLC, et al., Case 3:16-cv-00438-PK, has stayed all actions against entities which are owned by Aequitas, and PAG is one such entity.

30.     Non-party SCG was an RIA firm where investment adviser representatives Ramirez.  Peterson and Maurer all were investment adviser representatives.   SCG was purchased by an Aequitas entity called Aspen Grove under the circumstances described in paragraphs below.  SCG ceased doing business in about August, 2014.

31.     Defendant Strategic Capital Alternatives LLC ("SCA"), a Washington limited liability company,  a third RIA firm, substantially contributed to the sale of Aequitas  to the clients of SCG and PAG by "offering"  the Aequitas Investments "from Strategic Capital Alternatives" and by employing persons who touted and promoted the Aequitas Investments. SCA is a wholly owned subsidiary of SCA Holdings LLC, a Washington limited liability

Page 12 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

company.

32.    The named defendants that are entities are vicariously liable for the acts and omissions of their respective employees, officers, directors, managers, and/or wholly owned subsidiaries.

## FACTS

33.    Plaintiffs Brown, the Newcombs, the Chews, Gilbert, Baetjer, Gutow, Canter, and Schoen were clients of SCG.  SCG was an SEC-registered investment advisory firm with discretionary authority over the Plaintiffs' accounts.   When SCG's clients were transferred to PAG, the California Plaintiffs became clients of PAG.

34.    Plaintiffs Majidian, the Isgreens, and Clothier were clients of PAG.

35.    The Plaintiffs entered into contracts with and hired SCG, PAG and their respective Investment Advisor Representative (IARs) as identified in above paragraphs to (a) provide objective investment advice; (b) to act in their best interests; (c) disclose all material facts about the investments those IAR Defendants solicited, promoted  and sold; and (d) and to recommend investments that were suitable to their needs.

36.    In fact, the investment adviser representatives of PAG and SCG solicited and sold Aequitas Investments to each of the Plaintiffs not because those were good investment choices for Plaintiffs, but because of the conflicted relationship between Aequitas and SCG/PAG.

37.    The nature of the conflicted relationship is described below, and involves the role of the control person defendants to Aequitas and to SCG/PAG.

## The Sale of Strategic Capital Group To Private Advisory Group
## To Conceal Regulatory Sanctions

38.    Although it was not disclosed to the plaintiffs, SCG had a history of regulatory and other problems.  Fidelity Investments, which once included SCG among its recommended advisory firms, terminated the relationship in 2012.  Charles Schwab did the same at about the

Page 13 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

same time.

39.    Defendant Norman Gary Price, SCG's Chief Executive Officer, sold or otherwise transferred SCG's assets to Aspen Grove, an Aequitas company, in the fall of 2014.  At the time of transfer,  Mr. Price and SCG were the targets of an administrative proceeding brought by the SEC *called In The Matter of Strategic Capital Group, LLC and N. Gary Price*, SEC Administrative File No. 3-16138.  The SEC charged that SCG had acquired securities through Defendant RP Capital, and then resold them at a higher price to SCG customers, while falsely representing that SCG had no role as a principal to the transactions, and without disclosing the mark-ups. The SEC also charged that SCG was providing false information about its performance record to clients. The SEC also charged that Defendant Price failed to implement appropriate compliance policies and caused the SCG violations.

40.    On September 18, 2014, the SEC issued a Cease and Desist Order in that case, including censures, disgorgement and fines of more than $500,000, and an order for both SCG and Price to cease and desist from committing future violations.  The SEC issued a press release and publicized the action.  Defendant Price then sold SCG to Aspen Grove, and Bean Holdings, LLC who formed PAG, and SCG's advisers moved over to  PAG.   As a part of the deal, PAG agreed to accept all of SCG's Aequitas investments, which significantly boosted its total assets under management ("AUM") (and its revenues), including the addition of $110 million of Aequitas investments to its AUM.

**The Control Person Status of Defendants Price, RP Capital, S. Christopher Bean, Douglas Bean, and Timothy J. Feehan, Jr., and the Conflicts of  SCG and PAG in Selling Aequitas Products**

41.    When Aspen Grove and Bean Holdings acquired SCG in 2014, SCG's clients owned approximately $110 million in high-risk Aequitas products, or about 25% of the entire SCG assets under management.  By the time Aequitas collapsed, PAG had put approximately

Page 14 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

330 of its 600 clients in Aequitas products, selling an additional $128 million in Aequitas notes and funds.   That concentration of client assets was not coincidental.  The sale of Aequitas products was made not because SCG/PAG clients had requested or were suitable for high risk, private unsecured promissory notes or fund interests.  Rather, although SCG and PAG held themselves out as independent RIA firms which put their clients first and gave objective investment advice free of conflicts of interest, SCG was affiliated with, and PAG were operated and controlled by, Aequitas and its affiliates.  SCG and PAG sold Aequitas products to clients who were unaware of the Aequitas connection to their investment advisor.

42.    The extent of Aequitas's control over the RIAs is intentionally complex to obscure the true nature of the relationships.  PAG, while posing as an independent RIA firm, was indirectly owned by Aequitas.   An entity called Aspen Grove Equity Solutions, LLC "Aspen Grove") owned a 68% majority interest of PAG.  Aspen Grove, in turn, was 60% owned by the Aequitas Capital Opportunities Fund.  According to the SEC Form ADV Part 2A of Summit Advisor Solutions dated September 24, 2015, p 32, Aspen Grove was also owned in part by Defendant Norman Gary Price, the former CEO of SCG.  Defendants Ronald Robertson and Timothy J. Feehan, Jr.  were, at material times, members and managers of Aspen Grove.

43.    Defendant Bean Holdings, LLC, which in turn was owned by defendants Douglas R. Bean and S. Christopher Bean, was the other owner of PAG.

44.    Not only was PAG majority owned by Aequitas's Aspen Grove, it was controlled by Aequitas affiliates as well.  PAG's July, 2015 Form ADV lists the following direct control persons:  Robert Jesenik, who was the Chief Operating Officer of Aequitas, and Brian Oliver, Andrew MacRitchie, Craig Froude, and Olaf Janke, all top Aequitas executive officers. Additionally, documents filed with the SEC reveal that Aequitas Capital Management, Inc. is also a direct control person of PAG. Those relationships explain why PAG's SEC Form ADV filed with the SEC on July 14, 2015 includes a long list of Aequitas affiliates as the indirect

Page 15 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

controllers of PAG, including Aequitas Holdings, Inc., and Aequitas Wealth Management.

45.     Plaintiffs were solicited and sold the Aequitas Investments because of the undisclosed conflicted relationships between the Defendants and Aequitas as described in foregoing paragraphs.

## Material Facts About Aequitas That Defendants Should Have Known But Never Disclosed: Corinthian College

46.     All Defendants should have known that Aequitas's business and assets were directly linked to Corinthian College, a for-profit college chain that fraudulently induced borrowers to take out loans with false promises of jobs and careers.  Defendants had actual knowledge of those facts, and in addition are charged with the knowledge of Aequitas's activity as a result of the principal-agent relationship between Aequitas and the Defendants.

47.     Between 2011 and 2014, Aequitas purchased more than $561 million in student loan debt, virtually all of which was with Corinthian College.  The performance of those loans would have a material impact on the Aequitas Investments.   The Aequitas relationship with Corinthian, and Corinthian itself, was plagued with problems dating back to at least 2012.

48.     Defendant Price had specific discussions with the investment adviser representatives of SCG and PAG, including the Defendants, about the Corinthian loans that Aequitas had purchased.

49.     On October 5, 2012, the American Student Financial Group, Inc. ("AFSG") sued Aequitas Capital Management, Inc. ("ACM") in the US District Court in Los Angeles.  AFSG alleged that ACM stole confidential information from AFSG regarding the Corinthian loan program, infringed on AFSG's contract, breached its contract, and failed to pay commissions owing to AFSG.  The AFSG complaint was amended on October 21, 2013 to allege fraud against

Page 16 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

ACM.  That case remained in active litigation until the day before it was scheduled to go to trial in March, 2016, when the trial was postponed because of the Aequitas receivership.

50.     On June 20, 2014, The Wall Street Journal published an article about Corinthian, stating that it "teeters on brink."

51.     On September 16, 2014, the Consumer Financial Protection Bureau ("CFPB") filed a lawsuit against Corinthian Colleges in federal district court in Chicago.  That case alleges that Corinthian engaged in predatory lending practices  in which it marketed and promoted its student loan program be deceptively inducing students to borrow money in order to enroll in its facilities. Related to the CFPB's action, an independent monitor was appointed to oversee Corinthian's actions, and a system was established to sell Corinthian assets and refund at least $30 million of student loans to the borrowers.

52.     On August 20, 2014, Corinthian sold loans with a face value of $505 million, for $19 million.  Corinthian was accused of fraudulently misrepresenting the value of its education and the success of its students in finding employment.

53.     In February, 2015, Corinthian student borrowers began to organize and strike, demanding forgiveness of their loans taken out to attend the fraudulent college.  Aequitas had purchased many of those loans and it was clear that default rates were going to be high.

54.     On April 14, 2015, the US Department of Education fined Corinthian $30 million for its misrepresentations regarding its student loans and the value of its education.   Then, on May 4, 2015, Corinthian filed for bankruptcy.

55.     In May, 2015, Aequitas stated in an SEC filing that changing regulations could impair performance of its investment products.   In June and July, 2015, the US Department of Education began a process to forgive student loans to defrauded Corinthian students.   To date, more than $130 million in those loans has been forgiven.  There was no doubt that default rates on student loan debt that Aequitas purchased from Corinthian would have extraordinarily high

Page 17 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

default rates.

56.     These actions directly affected the value of the Corinthian loans that Aequitas had

purchased.

57.     The Defendants omitted to state the Corinthian facts to the Plaintiffs and/or

affirmatively misrepresented that the Corinthian College loans would have no material effect on

the Plaintiffs' Aequitas Investments, and a reasonable person would have attached importance to

those facts in determining whether to buy the Aequitas Investments.

## The Speculative Nature of the Aequitas Investments.

## ACF Notes

58.     The ACF Notes sold to Plaintiffs by their registered investment advisory firms

were issued by another of Aequitas Capital Management's subsidiaries, Aequitas Commercial

Finance (ACF).  ACF raised money from investors, including Plaintiffs, through the sale of

promissory notes.  The ACF Notes were highly speculative at best.

59.     ACF has a single member, Aequitas Holdings, LLC.  Investors therefore had no

control over the issuer, even though they funded it.  Since investors have no control over ACF,

they also had no control over what ACF did with the proceeds of the ACF Note sales.  The ACF

notes were high risk in part because there was virtually no limit on what the issuer ACF could do

with the ACF Note proceeds.   Among other things, ACF could use investor money to invest in

other Aequitas companies, or to repay principal and interest to prior ACF Note investors.

Repayment of prior investors with new ACF Notes proceeds could occur whenever ACF lacked

the funds to make the interest and principal payments to its prior existing lenders.

60.     ACF also planned to use the ACF Note proceeds to purchase, among others,  sub-

prime auto loans, leveraged special purpose entities that Aequitas created or controlled, other

Aequitas funds,  and student loan receivables. The student loan receivables were particularly

problematic, because Aequitas Capital Management had been embroiled in federal court

Page 18 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

litigation over its student loan practices since 2012. And, as of December, 2013, the student loan receivables accounted for more than 75% of ACF's total receivables, and those receivables were of particularly high risk.

61.    Those facts stand in stark contrast to the statements that SCG and PAG investment adviser representatives made to plaintiffs: that the ACF Note proceeds were used entirely to fund the purchase of discounted hospital receivables. Those hospital notes were represented to be safe because, if the notes were not repaid by the borrowers, substantial, reputable hospitals would simply repurchase them from Aequitas.

62.    ACF Note Fees. ACF charged a 2% annual fee to manage the ACF Note proceeds – by investing them into other Aequitas programs. In addition, ACF charged fully 20% of the net income of ACF as a management fee.

63.    Lack of Security. The greatest risk in the ACF Notes was that, despite their name, there was no real security. Although titled Secured Subordinated Promissory Notes, in fact any security was illusory, and any remedies to investors upon default were virtually non-existent.

64.    The ACF Notes were secured by the personal property of ACF. However, that security was subordinated and junior to any senior creditors of ACF. There was no limit on the number or amount of senior creditors. Among the secured creditors were the commercial credit facilities that Aequitas companies used to finance their businesses. And, secured creditors included Bank of America, who extended a $35 million line of credit to ACF, Capital Source Bank, which had loaned ACF millions of dollars, and Scottrade Bank, which had an outstanding debt of between $25 million and $50 million to ACF. If ACF got into financial trouble, which it certainly has, each of those creditors appears to be entitled to be paid from any security before any ACF Note investors. The Defendants did not discuss these facts with Plaintiffs before selling the investment to them.

65.    The "security" had additional problems. If there were any security in ACF

Page 19 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

personal assets that were not already secured by senior creditors, that security would be shared with other ACF Note holders, meaning that any security was diluted each time a new note was sold.   More importantly, if ACF missed any payments to any secured creditor, payments to ACF Note holders would stop.  Upon any dissolution or winding up of ACF, senior creditors would be paid in full before ACF Note holders received anything.   Furthermore, ACF Note investors were prohibited from taking any legal action to enforce payment on their notes without the consent of the senior creditors.  And, ACF Note holders could not take any action to enforce any security agreement they had until six months after the ACF Notes went into default -- a restriction that did not apply to senior creditors -- at which time there would be little or no security for investors to recover.

66.     Plaintiffs who purchased ACF Notes were unaware of the facts described above.

**AIOF Senior Secured Promissory Notes**

67.     Similar levels of risk were inherent in the AIOF Senior Secured Promissory Notes sold to Plaintiffs Baetjer and Gutow. As the name implies, these private note investments were sold to the plaintiffs as safe and secure investments.  In fact, the AIOF was a fund whose sole member was Aequitas Commercial Finance, LLC.   It was managed by Aequitas Investment Management.  The AIOF's only assets according to its financial statements were the principal and interest due from loans the fund had made to Aequitas affiliates, primarily if not exclusively ACF, at rates up to 18% annually.   ACF invested in sub-prime auto loans, leveraged special purpose entities that Aequitas created or controlled, other Aequitas funds, and high-risk student loan receivables. The student loan receivables were particularly problematic, because Aequitas Capital Management had been embroiled in federal court litigation over its student loan practices since 2012.  And, as of December, 2013, the student loan receivables accounted for more than 75% of ACF's total receivables,

68.     Although Plaintiff Gutow and Baetjer's notes were represented as being fully

Page 20 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

collateralized and secure, they were not secured by anything other than the loans that were due AIOF from other Aequitas entities.

### ETC Founder's Fund

69.     The ETC Founders Fund, which was sold to plaintiff Canter, was also a speculative investment, contrary to the representations made by the Defendants, and intertwined with other Aequitas entities.  The manager and investment advisor to the Founders Fund was Aequitas Investment Management, LLC.  The Founders Fund borrowed $3.8 million from ACF at an 11% interest rate, secured by a priority lien on all Founders Fund assets, to purchase stock in ETC Global Holdings, Inc., an entity in which ACF held a large equity ownership position. Investor money was to first pay off the ACF loan, and then would be used to purchase more stock in Global Holdings – which was the Founder's Fund's only investment.  As its Manager, Aequitas Investment Management, LLC, had total discretionary control over the management of the Founders Fund, charged a 2% management fee, and would receive 20% of profits.

70.     ETC Global Holdings is in turn the parent company of its wholly-owned subsidiary, Electronic Transaction Clearing, Inc., a FINRA-registered brokerage firm that purportedly performed clearing services.  Electronic Transaction Clearing had been operating for only four years at the time of the Founders Fund initial offering, had minimal active clients, and according to audited financials dated August, 2011 the firm was operating at a loss.

71.     At the time of the first offering in 2011, Electronic Transaction Clearing was being investigated by the SEC and had been charged by the Chicago Board Options Exchange with alleged multiple violations of federal securities laws and regulations.
Defendants did not discuss these facts about the ETC Founders Fund before selling the investment to plaintiff Canter.

### The Defendants Misrepresented The Levels Of Risk

72.     The defendants misrepresented the Aequitas Investments as safe and secure when

Page 21 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

they were highly speculative at best.

73.    None of the Defendants told Plaintiffs that they were purchasing speculative, high risk investments.  To the contrary, through their promotional efforts, Defendants represented that the Aequitas Investments were safe and secure.

74.    In addition, the Aequitas Investments failed the reasonable basis suitability test described in Rule 2111 of the Financial Industry Regulatory Authority.

75.    Plaintiffs tender their Aequitas investments to Defendants upon payment of the amounts owing under the applicable state securities laws.

76.    Plaintiffs did not discover and could not reasonably have discovered the basis for their claims until February, 2016 at the earliest, when they received notice that Aequitas was suspending dividend payments.  PAG and its advisers misrepresented to the plaintiffs up until March of 2016 would recover their investments.

77.    Each cause of action alleged against any individual defendant is also alleged against the individual's marital community.

## CLASS ACTION ALLEGATIONS

78.    Plaintiff brings this case as a class action pursuant to Rule 23(a) and 23(b)(1)(B) of the Federal Rules of Civil Procedure on behalf of all persons who purchased  or renewed  and continue to hold Aequitas promissory notes and funds while they were clients of Strategic Capital Group, LLC or Private Advisory Group LLC and upon the advice or recommendation of SCG or PAG or their investment advisor representatives.  The Class does not include Defendants, their officers, directors or employees.  The Class also does not include any of the Aequitas affiliated companies, and their officers, directors, board members, advisors, agents, employees, and affiliates, and the immediate family members of each of them.

79.    Members of the class are so numerous that joinder is impracticable. The class exceeds 200 members.

Page 22 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

80.     There are questions of law and fact common to the class, including (a) the duties that SCG, PAG and their investment advisor representatives owe to their clients; (b) the extent to which RP Capital, and individual defendants Price Robertson and Feehan were substantial contributive factors in the sales of the Aequitas Investments to the plaintiffs and the class; (c) the extent to which material information was not adequately disclosed to the plaintiffs and the class prior to their purchase of the Aequitas Investments; (d) whether defendants owed and breached fiduciary duties to the plaintiffs by failing to disclose the nature of the relationships between the defendants and Aequitas; (e) the extent to which defendants performed adequate due diligence before offering and/or playing a substantially contributive role in the sale of the Aequitas investment to plaintiffs and the class; f) the extent to which the defendants received undisclosed compensation of any kind resulting from the sale of the Aequitas Investments to plaintiffs and the class; (g)  whether the defendants were a substantial contributive factor in the sale of the Aequitas Investments to plaintiffs and the class.

81.     These common questions of law and fact predominate over any other questions affecting only individual class members.

82.     Plaintiffs' claims are typical of the claims of the class in that the claims are based upon a common investment vehicle, all class members were damaged by the same wrongful conduct, and the relief sought is common to the class.

83.     Plaintiffs will fairly and adequately represent the interests of the class in that they are typical of persons who purchased Aequitas securities, and have no conflicts with any other member of the Class. Plaintiffs have retained competent counsel with substantial experienced in class action, securities, and financial advisor litigation.

84.     A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy, as the burden of individual litigation makes it impracticable for Class members to seek individual redress for the wrongful conduct alleged.

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

## CLAIMS FOR RELIEF

### First Claim for Relief: Negligence

### [Against Defendants Douglas R. Bean, S. Christopher Bean, Jonathan Bishopp, N. Gary Price, Ronald Robertson, Timothy Feehan]

85.    All plaintiffs incorporate all other allegations in this Complaint.

86.    Defendants had duties to plaintiffs including a duty to exercise care commensurate with their securities registrations, their qualifications, and because they held themselves out to be investment professionals.

87.    Defendants' duties included a duty to independently undertake due diligence and to independently investigate and analyze the securities before recommending them. Defendants had a duty to analyze and investigate the Aequitas Investments sufficiently to provide a reasonable basis for a belief that the key representations were truthful.

88.    Defendants had a heightened duty to investigate because they should have known of the conflicts of interest between the issuer and the related persons promoting or selling the securities.

89.    Defendants had a duty to understand the potential risks and rewards of the Aequitas Investments, to ensure that their recommendations were suitable and met reasonable basis, customer specific, and quantitative suitability standards, including avoiding over-concentration in any particular asset or asset class. Defendants violated RCW 21.20.702, as well as other statutes, which is evidence of negligence.

90.    Defendants had a duty to investigate affirmatively when it appeared that the Aequitas Investments required registration.

91.    Defendants had a duty to monitor and keep their clients apprised of newly acquired adverse information about the Aequitas Investments up to the time of sale and during the entire time that plaintiffs were holders of their securities, and to communicate adverse

Page 24 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

information to their clients as the adverse information became known.

92.    Defendants fell below the standard of care applicable to investment professionals and otherwise breached their duties of ordinary care.

93.    The individual plaintiffs and the class suffered damages proximately caused by the defendants' negligence.

**Second Claim For Relief: Breach of Fiduciary Duty**

**[Against Defendants Douglas R. Bean, S. Christopher Bean, Jonathan Bishopp, N. Gary Price, Ronald Robertson, Timothy Feehan]**

94.    All plaintiffs incorporate all other allegations in this Complaint.

95.    The defendants named in this claim were fiduciaries to each plaintiff to whom SCG and PAG gave investment advice, provided investment services, and/or solicited or sold the Aequitas Investments

96.    The scope of defendants' fiduciary duties is identified by statute, the investment advisory contract between plaintiffs and PAG, and common law.

97.    Defendants are subject to Section 206 of the Investment Advisers Act, which imposes a fiduciary duty on investment advisers, and makes it unlawful for and an investment adviser to engage in fraudulent, deceptive or manipulative conduct.

98.    The Supreme Court in *SEC v. Capital Gains Research Bureau, Inc*. held that Section 206 imposes a fiduciary duty on investment advisers, by operation of law. Defendants' fiduciary duty includes a duty to fully disclose and/or avoid conflicts of interest and/or self-dealing, and to prevent an adviser from not overreaching or taking unfair advantage of a client's trust.

99.    In the Discretionary Investment Advisory Agreement between PAG and plaintiffs, PAG agreed that it and its IARs had a duty to exercise the "degree of care, skill, prudence, and diligence under the circumstances that a person acting in a fiduciary capacity would use."

Page 25 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

100.    As fiduciaries, Defendants' duties included a duty to deal with plaintiffs with utmost good faith and, solely in the best interest of the plaintiffs, with due care and loyalty, to keep informed of market changes and monitor the changes related to the Aequitas Investments, to act responsibly to protect plaintiffs against such changes, to keep the plaintiffs full informed, and to explain forthrightly the practical impact and potential risks of the proposed course of dealing.

101.    The fiduciary duties of defendants also included the duties to (a) ascertain that the plaintiffs understood the investment risks in light of his/her actual financial situation; (b) inform the customer that no speculative investments were suitable if the customer was unable or unwilling to bear the risk; and (c) refrain from soliciting or entering into transactions that were beyond the customer's risk threshold or time horizon.

102.    As fiduciaries, Defendants also had an affirmative duty to make full and fair disclosure of all material facts to plaintiffs, to disclose or avoid a situation particularly where the adviser's interests may conflict with the client's or that involved self-dealing by the adviser, and to not participate in any unfair profit or advantage vis-à-vis the investor.

103.    Defendants' fiduciary duties included the obligation to monitor the plaintiffs' investments and to recommend against renewing investments or recommending demanding liquidation or repayment when negative information about the Aequitas Investments became known or should have been known to defendants.

104.    Defendants breached their fiduciary duties to plaintiffs and fell below the standards applicable to a fiduciary.

105.    Plaintiffs suffered damages proximately caused by the defendants' breach of their fiduciary duties.

/ / /

/ / /

Page 26 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

**Third Claim for Relief: Negligent Supervision**

**[Against Defendants Norman Gary Price, Ronald L. Robertson,**

**Timothy J. Feehan, Jr., S. Christopher Bean, and**

**Jonathan Bishopp]**

106.    All plaintiffs incorporate all other allegations in this Complaint.

107.    Defendants should have known that the persons selling Aequitas Investments were engaged in improper activities, including the negligent acts and breaches of fiduciary duty identified above.

108.    Defendants Price, Robertson and Feehan had obligations to supervise the IARs at SCG, with a view toward preventing violations of securities laws, including securities laws requiring registration, the prohibition on recommending unsuitable securities, and prohibiting misleading statements of omissions in connection with the sale of any security.

109.    Defendants S Christopher Bean and Jonathan Bishopp had a duty to supervise the IARs at PAG, with a view toward preventing violations of securities laws, including securities laws requiring registration, the prohibition on recommending unsuitable securities, and prohibiting misleading statements of omissions in connection with the sale of any security.

110.    Defendants failed to develop and use supervisory tools, such as exception reports, account activity reports, and customer suitability information that would have alerted them to the pattern of misrepresentations and omissions in connection with the sale of Aequitas Investments.

111.    In their capacity as principals, control persons, and/or supervisors, defendants failed to develop, implement, and monitor a due diligence process to establish selection criteria for investments, and to avoid self-dealing and conflicts of interest.  To the contrary, they used platforms that were designed to steer plaintiffs into Aequitas Investments that would benefit defendants.

112.    Defendants Norman Gary Price, Ronald L. Robertson, Timothy J. Feehan, Jr., S.

Page 27 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

Christopher Bean, and Jonathan Bishopp breached their duties to supervise.

113.    Plaintiffs suffered damages proximately caused by negligent supervision.

**Fourth Claim For Relief**

**California Corporate Securities Law - Control Person/Material Aiding liability**

**(§§ 25401, 25504, 25504.1)**

**[Against Defendants Norman Gary Price, Ronald J. Robertson, RP Capital, LLC,**

**Strategic Capital Alternatives LLC, SCA Holdings LLC, Douglas R. Bean,**

**S. Christopher Bean and Bean Holdings, LLC]**

114.    Plaintiffs Brown, the Newcombs, the Chews, Gilbert, Baetjer, Gutow, Canter, and Schoen, individually and on behalf of the class members who were California residents at the time of purchase of their Aequitas Investments, incorporate all other allegations in this Complaint.

115.    Section 25504 of the California Corporate Securities Law provides that:

Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

116.    At all material times for each transaction, Defendants Price and Robertson as control persons of SCG directly or indirectly controlled representatives Peterson, Ramirez and Maurer.

Page 28 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

117.    Defendant Price, Robertson, and/or SCAH directly or indirectly controlled PAG through their interest in Aspen Grove.

118.    For all transactions that occurred in or after October, 2014, representatives Douglas R. Bean, S. Christopher Bean and Bean Holdings, LLC directly or indirectly controlled representatives Peterson, Ramirez and Maurer, and they directly or indirectly controlled PAG.

119.    Section 25504.1 of the California Corporate Securities Law provides that:

Any person who materially assists in any violation of Section 25110, 25120, 25130, 25133, or 25401, or a condition of qualification under Chapter 2 (commencing with Section 25110) of Part 2 of this division imposed pursuant to Section 25141, or a condition of qualification under Chapter 3 (commencing with Section 25120) of Part 2 of this division imposed pursuant to Section 25141, or an order suspending trading issued pursuant to Section 25219, with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation.

120.    Defendant RP Capital, LLC is a broker-dealer which materially aided in the sales of the Aequitas Investments to Plaintiffs.   It was controlled by defendants Price, Feehan and Robertson, and was the broker-dealer for representatives Maurer, Peterson and Ramirez.

121.    Defendant Price was an agent of RP Capital, LLC, who materially aided the sales of the Aequitas Investments to the California Plaintiffs.

122.    Defendant Robertson was an agent of RP Capital, LLC, who materially aided the sales of the Aequitas Investments to the California Plaintiffs.

123.    The plaintiffs are entitled to the consideration paid for the security, plus interest at the legal rate, less the amount of any income received on the security, upon tender of the security, pursuant to Section 25501.

/ / /

/ / /

Page 29 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

**Fifth Claim For Relief: California Corporation Securities Law - Material Aid With Intent To Deceive (Cal. Corp. Code Section 25504.1)**

**[Against Defendants Norman Gary Price, Ronald J. Robertson, Strategic Capital Alternatives LLC, and RP Capital, LLC]**

124.    Plaintiffs Brown, the Newcombs, the Chews, Gilbert, Baetjer, Gutow, Canter, and Schoen individually and on behalf of the class members who were California residents at the time of purchase of their Aequitas Investments, incorporate all previous paragraphs.

125.    Section 25504.1 of the California Corporate Securities Act provides that:

Any person who materially assists in any violation of Section . . . 25401, . . with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation.

126.    Defendants Price, Robertson, Feehan, Strategic Capital Alternatives LLC, and RP Capital materially assisted in the violation of Section 25401, as alleged in the First Claim For Relief, by providing substantial assistance to and controlling Maurer, Peterson and Ramirez, and inducing them into violating California Corporate Securities Action Section 25401, with intent to deceive or defraud, and as such are jointly and severally liable to the California Plaintiffs pursuant to Section 25504.1, by engaging in one or more of the following acts:

a.    Owning and controlling SCG while it was being used to promote and sell Aequitas investments to Plaintiffs.

b.    Arranging for the transfer of the California Plaintiffs' accounts from SCG to PAG to help ensure that those plaintiffs would continue to invest in and renew their Aequitas notes.

c.    Owning and controlling RP Capital which referred clients to and advised both Aequitas Capital Management and PAG for the purpose of having Plaintiffs invest money in Aequitas Investments.

d.    Owning and controlling Aspen Grove and using that ownership and control to

Page 30 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

direct PAG clients to invest in Aequitas Investments.

127.    Defendants Price, Robertson, Feehan, and RP Capital, with knowledge, directly or indirectly controlled SCG and PAG and Defendants Maurer, Peterson and Ramirez, and induced them into violating California Corporate Securities Action Section 25401.

128.    The plaintiffs are entitled to the consideration paid for the security, plus interest at the legal rate, less the amount of any income received on the security, upon tender of the security, pursuant to Section 25501.

**Sixth Claim For Relief:  Securities Act of Washington**

**Seller Liability (RCW 21.20.430(1))**

**[Against Defendants RP Capital, LLC, Strategic Capital Alternatives, LLC,**

**Douglas R. Bean, S. Christopher Bean, and Bean Holdings, LLC]**

129.    Plaintiffs Majidian, the Isgreens, and Clothier, and all class members who were clients of PAG at the time of their Aequitas purchases, incorporate all other allegations in this Complaint.

130.    Each of the Aequitas Investments was a "security" as defined by RCW 21.20.005(12)(a).

131.    Defendants were a substantial contributive factor in the sale of the Aequitas Investments to plaintiffs through one or more of the following acts:  creation and/or development of the security, introductions and/or referrals to persons licensed to sell securities following a determination or alleged determination that the investment was suitable for one or more plaintiffs, face to face communications, telephone conversations, and/or other direct contact with respect to the Aequitas Investments, involvement in the solicitation process, continuing to sell despite receiving warnings or negative information, and/or providing services, advice, or needed facilitation that was a catalyst to the sale of Aequitas Investments or that was authorized by or ratified by the issuer.

Page 31 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

132.    Defendants' conduct was a substantial factor in the sale of the Aequitas Investments to plaintiffs, defendants created a force or series of forces that were in continuous and active operation up to the time of the sales, and defendants' acts, omissions, and statements were close in time to the sales of the Aequitas Investments to plaintiffs. Defendants failed to stop the sale of Aequitas Investments even after having reason to know that the Aequitas companies were unstable.

133.    Defendants employed a device, scheme, or artifice to defraud, made to plaintiffs untrue statements of a material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and/or engaged in one or more acts, practices or a course of business that operated as a fraud or deceit upon one or more persons (including plaintiffs).

134.    Defendants employed a device, scheme, or artifice to defraud, made to plaintiffs untrue statements of a material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and/or engaged in one or more acts, practices or a course of business that operated as a fraud or deceit upon one or more persons (including plaintiffs).

135.    Defendants' acts, omissions, and statements were made in connection with the sale of the Aequitas Investments. The statements and/or omissions were ones that a reasonable person would attach importance to in determining his or her choice of action in the transactions; the acts, omissions, and statements of defendants were material to the sales of Aequitas Investments to plaintiffs.

136.    Plaintiffs actually and/or justifiably relied upon the acts and statements of defendants; in the alternative, plaintiffs' reliance is presumed.

137.    From defendants Norman Gary Price, Ronald L. Robertson, RP Capital, LLC, Strategic Capital Alternatives LLC, Douglas R. Bean, S. Christopher Bean, and Bean Holdings,

Page 32 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

LLC (and their marital communities), plaintiffs are entitled to recover the consideration paid for the security together with interest at eight percent per annum, and their reasonable attorney fees, less any income received.

**Seventh Claim for Relief:  Securities Act of Washington**

**Sale of unregistered securities (RCW 21.20.140)**

**[Against Defendants RP Capital, LLC, Strategic Capital Alternatives LLC,**

**Timothy J. Feehan, Jr., Douglas R. Bean,**

**S. Christopher Bean, and Bean Holdings, LLC]**

138.     Plaintiffs Majidian, the Isgreens, and Clothier, and all class members who were clients of PAG at the time of their Aequitas purchases, incorporate all other allegations in this Complaint..

139.     For purposes of applying RCW 21.20.140, the sale of ACF Notes, AIOF Notes, Founder's Fund, and other Aequitas Commercial Finance, LLC securities (in their various forms) were an integrated transaction.

140.     Defendants were a substantial contributive factor in the sale of the Aequitas Investments and therefore each was a "seller" of a security for purposes of RCW 21.20.

141.     The Aequitas Investments were not registered by coordination or qualification under RCW 21.20, not exempt from registration under RCW 21.10.310 or 21.20.320, and not a federal covered security.  Sale of the Aequitas Investments violated RCW 21.20.140.

142.     From Defendants RP Capital, LLC, Strategic Capital Alternatives LLC,  Douglas R. Bean, S. Christopher Bean, and Bean Holdings, LLC (and their marital communities), plaintiffs are entitled to recover the consideration paid for the security together with interest at eight percent per annum, and their reasonable attorney fees, less any income received.

/ / /

/ / /

Page 33 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

**Eighth Claim for Relief: Securities Act of Washington**

**Control Person /Material Aiding liability (RCW 21.20.430(3))**

**[Against Defendants Norman Gary Price, Ronald L. Robertson, RP Capital, LLC,**

**Strategic Capital Alternatives LLC, SCA Holdings LLC, Douglas R. Bean, S. Christopher**

**Bean, Bean Holdings, LLC, and Jonathan Bishopp]**

143.    Plaintiffs Majidian the Isgreens, and Clothier, individually and on behalf of the class members who were Washington residents at the time of purchase of their Aequitas Investments, incorporate all other allegations in this Complaint.

144.    Defendants were a substantial contributive factor in the sale of the Aequitas Investments and therefore each was a "seller" of a security for purposes of RCW 21.20.

145.    Defendants Norman Gary Price, Ronald L. Robertson, RP Capital, LLC, Timothy J. Feehan, Jr., SCA, SCAH, Douglas R. Bean, S. Christopher Bean, Bean Holdings, LLC, and Jonathan Bishopp directly or indirectly controlled a seller of the Aequitas Investments, and/or was a partner, officer, director or person who occupied a similar status or performed a similar function of a seller of Aequitas Investments. Defendants Norman Gary Price, Ronald L. Robertson, RP Capital, LLC, Timothy J. Feehan, Jr., Douglas R. Bean, S. Christopher Bean, Bean Holdings, LLC, and Jonathan Bishopp directly or indirectly had the power to direct or cause the direction of the management and policies of a seller, whether through ownership, voting power, by contract, or otherwise.

146.    Additionally or in the alternative, Defendants Norman Gary Price, Ronald L. Robertson, RP Capital, LLC, SCA, Timothy J. Feehan, Jr., Douglas R. Bean, S. Christopher Bean, Bean Holdings, LLC, and Jonathan Bishopp were employees of a seller and materially aided in the transactions, or were a broker-dealer or a salesperson (an individual representing a broker-dealer or issuer in effecting securities sales) who materially aided in the transactions. Defendants' acts and omissions had a natural tendency to influence or were capable of

Page 34 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

influencing plaintiffs' decisions to purchase, they associated their names and securities registrations with the transactions, their actions or omissions induced reliance by plaintiffs, and/or their participation facilitated the transactions in which Aequitas Investments were sold to plaintiffs.

147.    From Defendants Norman Gary Price, Ronald L. Robertson, RP Capital, LLC, Strategic Capital Alternatives LLC, SCA Holdings LLC, Timothy J. Feehan, Jr., Douglas R. Bean, S. Christopher Bean, Bean Holdings, LLC, and Jonathan Bishopp (and their marital communities), plaintiffs are entitled to recover the consideration paid for the security together with interest at eight percent per annum, and their reasonable attorney fees, less any income received.

### Ninth Claim for Relief: Washington Consumer Protection Act (RCW 19.86)

### [Against Defendants RP Capital, LLC, Bean Holdings, LLC,

### S. Christopher Bean, and Douglas R. Bean]

148.    All plaintiffs incorporate all other allegations in this Complaint.

149.    Defendants engaged in unfair or deceptive acts or practices.

150.    The unfair or deceptive acts or practices occurred in the conduct of trade or commerce and directly or indirectly affect the people of the State of Washington.

151.    Defendants either participated in the unfair or deceptive acts or practices, or directed others who engaged in unfair or deceptive acts or practices.

152.    The defendants' unfair or deceptive acts or practices injured other persons, had the capacity to injure other persons, or has the capacity to injure other persons.

153.    Plaintiffs suffered injury, proximately caused by the defendants' violation of the Consumer Protection Act.

154.    Plaintiffs are entitled to exemplary damages under RCW 19.86.090, together with the costs of this lawsuit, including reasonable attorney fees.

Page 35 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

**Tenth Claim For Relief:  Breach of Contract**

**[Against All Defendants]**

155.  All plaintiffs incorporate all other allegations in this Complaint.

156.  Plaintiffs had contracts with defendants which were supported by valuable consideration.  Those contracts required defendants to provide objective, unbiased financial advice, and to place the plaintiffs' interests ahead of the interests of the defendants.

157.  Defendants breached those obligations by failing to disclose the true close relationships between the defendants and the Aequitas companies, and by recommending and selling Aequitas investments to plaintiffs.

158.  Plaintiffs were damaged by defendants' breach.

**WHEREFORE**, Plaintiffs pray for relief as follows:

i.        That this case may proceed as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(1)(B), and certifying plaintiffs as class representatives and designating their counsel as counsel for the class.

ii.       For judgment in favor of plaintiffs and the class and against defendants jointly and severally in the amount of the consideration paid for the Aequitas Investments,  in an amount not less than $100 million, together with interest at the legal rate from the date of payment, costs, and, where provided for by statute, for reasonable attorneys' fees, less the amount of any income received on the security.

iii.      That plaintiffs and the class be awarded their costs and reasonable attorney fees.

iv.      For such other relief as the court deems just, equitable, or warranted by statute or common law.

/ / /

/ / /

Page 36 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937

**JURY DEMAND**

Plaintiffs demand a jury trial.


Dated this 2nd day of June, 2017


SAMUELS YOELIN KANTOR LLP

By: /s/  *Robert S. Banks, Jr.*
ROBERT S. BANKS, JR., OSB No. 821862
Telephone: 503-226-2966
Facsimile: 503-222-2937
bbanks@SamuelsLaw.com

CABLE, LANGENBACH, KINERK & BAUER, LLP

By: /s/  *Lawrence R. Cock*
LAWRENCE R. COCK,OSB No. 102524
Telephone: 206- 292-8800
Facsimile: 206- 292-0494
lrc@cablelang.com

Attorneys for Plaintiffs


Page 37 – CLASS ACTION COMPLAINT

SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Ave., Suite 3800
Portland, OR 97204-3642
Telephone (503) 226-2966
Facsimile (503) 222-2937